UNDERWRITERS SERVICE, Inc., a corporation, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15787.

United States Court of Appeals
Ninth Circuit.

July 15, 1958.

Thelen, Marrin, Johnson & Bridges, Chester H. Brandon, George E. Link, San Francisco, Cal., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Helen A. Buckley, David O. Walter, I. Henry Kutz, Lee A. Jackson, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before STEPHENS, Chief Judge, and DENMAN and FEE, Circuit Judges.

DENMAN, Circuit Judge.

Underwriters Service, Inc., hereafter Taxpayer, petitions for a review of a decision of the Tax Court in which the Commissioner's noticed deficiencies for income and excess profits taxes for the years 1950, 1951 and 1952 were upheld. All of the factual issues have been stipulated to and the question before us is purely a question of law, the proper amount of Taxpayer's "excess profits net income" for the year 1946. This is relevant to the tax due for the three above years as part of the base period 1946 through 1949 used for purposes of comparison to determine the excess profits taxes due for the period during which the Excess Profits Tax Act of 1950 was in effect.

The Excess Profits Tax Act of 1950 was passed to reach abnormal profits of corporations mainly but not necessarily due to the stimulation of the Korean War. Taxation under this Act is based upon an amount which is Taxpayer's adjusted excess profits net income minus the Taxpayer's excess profits credit and it is the calculation of the latter which forms the question for this appeal. There is a further deduction allowed for unused excess profits credits which is not here relevant. The basic section from which excess profits credit is determined is 26 U.S.C. § 435. Section 435(a) states that the credit is 83% [1] of the average base period [2] net income

---

1. This percentage varies slightly with the year in question. See 26 U.S.C. § 435(a).

2. "Base period" is defined by § 435(b)

with an exception not here applicable, as the period beginning January 1, 1946 and ending December 31, 1949.

with adjustments for additions to capital or reductions therein, no such adjustments being involved in the present case. The average base period net income may be computed by either of the two methods allowed by § 435(c) depending on which results in a higher average base period net income and thus a higher credit and a lower excess profits tax. Taxpayer here has used the method stated in § 435(d).

The statutory scheme for determining the average base period net income under § 435(d) is as follows:

(1) The monthly excess profits net income is computed for each of the 48 months in the base period.

(2) Either

(A) Any 12 consecutive months are eliminated or

(B) Any 36 consecutive months are retained.

(3) The aggregate excess profits net income for the 36 remaining months is computed.

(4) This total is divided by 3 and the result is the yearly average base period net income.

In dispute here is the application of the following provision of subsection (d) of section 435 to the peculiar factual situation of the Taxpayer in the year 1946:

"(d) The average base period net income determined under this subsection shall be determined as follows:

"(1) By computing the excess profits net income for each month in the base period. The excess profits net income for any month during any part of which the taxpayer was in existence shall be the excess profits net income for the taxable year in which such month falls divided by the number of full calendar months in such year, but in no case shall the excess profits net income for any

month be less than zero. The excess profits net income for any month during no part of which the taxpayer was in existence shall be zero."

Under Taxpayer's interpretation of this provision his total excess profits net income for the 12 months of the year 1946 [3] is $226,590.62 while the Commissioner's determination of this amount in this notice of deficiency was $139,791.09 minus a statutory loss adjustment of $3.33 or $139,787.76.

During the calendar year 1946 Taxpayer was continuously in business. For a portion of that year, September 20 to December 19, Taxpayer was a wholly owned subsidiary of Henry J. Kaiser Company and thus for that period was entitled to and did report its income on a consolidated return filed by those companies affiliated under the common parenthood of the Henry J. Kaiser Company. Thus Taxpayer's calendar year for 1946 was divided into three divisions: the period for which a consolidated return was filed and the two periods of independent existence before and after that period. Pursuant to advice contained in a letter from the Commissioner of Internal Revenue the Taxpayer filed separate returns for each period of the year 1946. The letter further stated that each such period shall be considered as a taxable year.

This factual situation must now be applied to the statutory scheme of section 435(d), supra. The Commissioner computed the Taxpayer's excess profits net income for 1946 by totaling its monthly excess profits net income counting each month as a whole month. The Taxpayer says this is incorrect since it had three "taxable years" during 1946 some parts of which extended only to parts of certain months of that calendar year and thus the Commissioner erred by not applying the second sentence of section 435(d) (1) reading:

3. This computation is relevant because a part of the aggregate excess profits net income for the 36 remaining months of the base period.

"The excess profit net income for any month during any part of which the taxpayer was in existence shall be the excess profits net income for the taxable year in which such month falls divided by the number of full calendar months in such year, but in no case shall the excess profits net income for any month be less than zero."

If the Commissioner did err then the correct calculation for the year 1946 appears in the note.[4]

We do not agree that Taxpayer has found what is called a "loophole" in the federal tax laws. The scheme of section 435(d) (1) was to find the average monthly income of the Taxpayer during the base period so that abnormal or non-recurring gains and losses would not throw the base period figures off the true income norm. The second sentence of that subsection was added to plan for the taxpayer who was in business for part of any month during the base period. By assigning to the partial month the year's income divided by the number of full months in that year a figure is arrived at for the partial month which approximates the probable income for that month had it been a full business month and thus gives a fairly accurate picture of the corporation's earnings for the base period. The taxpayer in the present case attempts to use this provision even though it was in existence for the entire calendar year of 1946 basing its argument on the ground that each of the three periods for which a return was filed is an "existence" and a "taxable year" as those terms are used in the second sentence of § 435(d) (1). As a result of this use Taxpayer's income for the months of September and December, 1946, is counted twice boosting its average monthly income from the actual figure of $11,629.66 to the figure of $18,882.55.

■■ The Taxpayer is correct in its example hypothesizing a corporation on the calendar year which commences business on November 30 and thus has an excess profits net income for the year of twice its actual income but incorrect in the inference it draws therefrom that in principle this result is the same as the one it is here asserting. In the example the corporation would have exhausted two of the 36 base period months it is allowed in determining its average base period net income. In stark contrast, Taxpayer here is contending that it should be able to use the income for two of the months of 1946 twice and yet exhaust only 12 months of the 36-month base period. The artificial creation of income without the concomitant balance of using up one or more of the months in the base period is not permitted by the subsection in question.

■ We are unable to find a case stating that where two alternative constructions of a revenue statute are possible the one directly thwarting or grossly distorting the evident purpose of the statute should be preferred over the one conforming to the purpose of the statute and to the purpose of the Congressional enactment as an organic whole.

| 4 Taxable year | Excess profits net income for taxable year | Number of full months in taxable year | Excess profits net income for each month or part of a month | Number of full and part months in period | Column 4 times Column 5 |
|---|---|---|---|---|---|
| 1/1/46 to 9/20/46 | $68,174.60 | 8 | $ 8,521.83 | 9 | $ 76,696.43 |
| 9/21/46 to 12/18/46 | 78,512.90 | 2 | 39,256.45 | 4 | 157,025.80 |
| 12/18/46 to 12/31/46 | (7,131.61) | 0 | (7,131.61) | 1 | (7,131.61) |

Total excess profits net income for the 12 months of the year 1946 . . $226,590.62

There is a second reason for the rejection of the petitioner's contention. The Taxpayer depends on the applicability of the second sentence of § 435 (d) (1) and then contends that its calculations are correct because each of its three phases of existence during 1946 was a "taxable year" for purposes of that sentence. We may grant the latter contention and still not reach the Taxpayer's result because, as the Tax Court held, the second sentence of section 435 (d) (1) has no applicability in this factual situation. That sentence starts out "The excess profits net income for any month during any part of which the taxpayer was in existence shall be * * *" This sentence was included in the section to provide a means for the calculation of excess profits net income when the taxpayer was only in existence for part of a month. The words "for any month during any part of which the taxpayer was in existence" require that there be a part of the month when Taxpayer was not in existence. Here Taxpayer was in existence, though under different stock control, for the entire year of 1946.

The judgment is affirmed.